RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0034p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

Nos. 03-2053/2117

MATTHEW J. DANIELS,

                *Plaintiff-Appellee,*

    *v.*

LEONARD WOODSIDE,

                *Defendant-Appellant,*

ANCHOR BAY SCHOOL DISTRICT, RONALD
TUSCANY,

                *Defendants.*

                                  Nos. 03-2053/2117/2369

No. 03-2369

MATTHEW J. DANIELS,

                *Plaintiff-Appellant,*

    *v.*

LEONARD WOODSIDE,

                *Defendant-Appellee,*

ANCHOR BAY SCHOOL DISTRICT, RONALD
TUSCANY,

                *Defendants.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-73902—Lawrence P. Zatkoff, District Judge.

Argued: August 12, 2004

Decided and Filed: January 24, 2005

Before: NELSON, SILER, and BATCHELDER, Circuit Judges.

1

_____

**COUNSEL**

**ARGUED:** David S. Steingold, DAVID S. STEINGOLD ASSOCIATES, Detroit, Michigan, for Plaintiff. Timothy J. Mullins, COX, HODGMAN & GIARMARCO, Troy, Michigan, Marcelyn A. Stepanski, JOHNSON, ROSATI, LaBARGE, ASELTYNE & FIELD, Farmington Hills, Michigan, for Defendants. **ON BRIEF:** David S. Steingold, Tracie D. Palmer, DAVID S. STEINGOLD ASSOCIATES, Detroit, Michigan, for Plaintiff. Timothy J. Mullins, COX, HODGMAN & GIARMARCO, Troy, Michigan, Marcelyn A. Stepanski, JOHNSON, ROSATI, LaBARGE, ASELTYNE & FIELD, Farmington Hills, Michigan, for Defendants.

_____

**OPINION**

_____

ALICE M. BATCHELDER, Circuit Judge. These consolidated appeals are taken from judgments entered by the district court in Matthew Daniels's 42 U.S.C. § 1983 action arising out of Daniels's pre-trial detention as a 16-year-old on charges of murder. Daniels appeals the district court's grant of summary judgment to Ronald Tuscany, Macomb County Sheriff, on Daniels's claims that Tuscany violated his Fifth, Eighth and Fourteenth Amendment rights by permitting him to be housed in the Macomb County Jail as an adult in violation of the Michigan law governing pre-trial detention of juveniles, and by housing him under inhumane conditions. Daniels also appeals the district court's grant of summary judgment to the Anchor Bay School District ("Anchor Bay") on his claim that Anchor Bay denied him due process by expelling him from an alternative education program upon his arrest and pre-trial detention, and refusing to permit him to re-enroll in that program after his release from pre-trial detention. Leonard Woodside, Anchor Bay's superintendent, appeals the district court's denial of his motion for summary judgment on Daniels's due process claim.

Daniels does not challenge the constitutionality of the Michigan law governing pre-trial detention of juveniles but rather complains of Tuscany's alleged violation of that law. Because we conclude that Daniels was confined in accordance with Michigan law and that the restrictions and conditions of his confinement were an incident of the state's legitimate goal of preventing him from committing suicide, we will affirm the grant of summary judgment in favor of Sheriff Tuscany. Further, because we conclude that Michigan law does not create in a Michigan resident a property right in alternative education provided by a public school district, and therefore Anchor Bay and Woodside did not violate Daniels's constitutional rights in terminating his participation in that program or in denying him readmission to it, we will affirm the grant of summary judgment to Anchor Bay and reverse the denial of summary judgment to Woodside.

**FACTUAL AND PROCEDURAL BACKGROUND**

Daniels and two others were charged on October 27, 2000, with the murder of Justin Mello. Daniels was remanded by the Macomb County District Court to the custody of the Macomb County Jail, an adult correctional facility, pending his preliminary examination. The court notified the jail administrators, including Sheriff Tuscany, that because Daniels was 16 years old, he was to be segregated from the adult prisoners in accordance with Michigan statutory law. When Daniels arrived at the jail, he was initially housed in the medical ward, one of only three places in the Macomb County Jail where he could be segregated from adults. Shortly thereafter, he was transferred to the mental health floor, another area where he could be segregated from adult prisoners, until mental health professionals could evaluate him and rule out any risk of suicide. Records of Daniels's mental health evaluations at the jail reflect that he expressed suicidal thoughts

during the evaluations, and he was therefore placed on suicide watch. Daniels claims that while he was on suicide watch, he was kept under twenty-four hour lock-down; he was not permitted to leave his cell for four days, except for limited visits with a clergyman and an attorney; he was denied the ability to attend to any basic hygiene needs; he was required to wear a "suicide robe," which is a sleeveless, legless gown that did not adequately fasten in the back; and for the first several days of his confinement he had neither socks for his feet nor sheets or pillows for his bed.

Daniels was released from jail after his preliminary hearing resulted in a finding of no probable cause due to a lack of admissible evidence. After his release, Daniels asked Woodside to re-admit him to Anchor Bay's voluntary alternative education program in which he had been enrolled for about one month prior to his arrest. This program, called "Skill Quest," is described in the literature of the school district as "a special alternative high school program which is offered during the day for youth under 19 without diplomas, who have returned to school after being out for at least one semester." Admission to the Skill Quest program is discretionary with the superintendent, and students in the program are required to adhere to the program's attendance policy and the school district's written code of conduct. The attendance policy provides that if a student misses more than six hours of class, he automatically loses credit for that course.

Daniels had enrolled in Skill Quest some eight months after he dropped out of high school upon attaining the age of 16, the age at which Michigan law permits students to withdraw from school. During the month in which Daniels was enrolled in the program, he had not missed any classes or been subject to any disciplinary actions. Because of his arrest and pre-trial detention, however, Daniels missed substantially more than six hours of class. He therefore automatically lost credit in the courses in which he was enrolled, and in order to participate any further in the program, he was required to seek re-enrollment for the following semester. Superintendent Woodside denied Daniels's request for readmission to Skill Quest, citing the advice of the school district's counsel to the effect that, despite the court's finding of no probable cause, Daniels was still implicated in the Mello murder and presented a danger to students and staff. In April 2000, after another individual confessed to the murder, Woodside notified Daniels that he would be permitted to enroll in Skill Quest at the commencement of the next semester, that is, in September 2001. Daniels enrolled at that time, but after attending classes for only about one month, he began to accrue excessive absences, lost class credit, and dropped out of the program.

On October 15, 2001, Daniels filed this 42 U.S.C. § 1983 action in the United States District Court for the Eastern District of Michigan against numerous state, county and school district defendants, complaining that these defendants had violated various of his constitutional rights in connection with his arrest and pre-trial detention. Only defendants Tuscany, Woodside and Anchor Bay remain in the action, all other defendants having been dismissed by stipulation of the parties during the course of this litigation.

Daniels's Complaint alleges that Woodside and Anchor Bay violated his right to due process either by refusing, without a hearing, to allow him to re-enroll in the Skill Quest program, or by expelling him, without a hearing, from his initial participation in the Skill Quest program. Daniels claims that Tuscany, as the Macomb County Sheriff, deprived Daniels of his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution by improperly housing him as an adult and by mistreating him during his detention.

Tuscany moved for dismissal or, in the alternative, for summary judgment and the district court granted the motion. Anchor Bay and Woodside filed a joint motion for summary judgment. Anchor Bay argued that its policies are constitutional and have not been shown to be the cause of any injury to Daniels, and that the school district cannot be held vicariously liable for the acts of its employees. Woodside argued that he is entitled to qualified immunity for his actions. The district court granted Anchor Bay's motion, but denied Woodside's. Woodside then filed a Motion to

Amend Judgment, arguing that Daniels did not have a property right in the alternative education program Skill Quest, and therefore Daniels's due process rights were not violated when he was dropped from the program initially or when Woodside refused to re-enroll him in that program. The district court denied the motion. Woodside brings an interlocutory appeal of the district court's denial of his motion for summary judgment on qualified immunity grounds and the denial of his motion to amend the judgment.

Daniels filed a motion to permit an interlocutory appeal of the district court's order granting summary judgment to Tuscany and Anchor Bay. The district court entered final judgment as to Tuscany and Anchor Bay and certified Daniels's dismissed claims for immediate appeal under Federal Rule of Civil Procedure 54(b), fully satisfying the requirements of that rule.

## ANALYSIS

We review de novo a district court's grant of summary judgment, using the same standard under Rule 56(c) used by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). We must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). To withstand summary judgment, the non-movant must present sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## I.

The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit a pretrial detainee from being punished prior to an adjudication of guilt. *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985). Through the Due Process Clause of the Fourteenth Amendment, pretrial detainees are entitled to the same Eighth Amendment rights as are other inmates. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994). In determining whether conditions of pretrial confinement violate the Fifth, Fourteenth, or Eighth Amendments, the court must evaluate whether a restriction imposed on a detainee was imposed for the purpose of punishment, or was in furtherance of some other legitimate government goal. *Roberts*, 773 F.2d at 723.

As we understand his argument, Daniels claims that Tuscany, as Sheriff in charge of the Macomb County Jail where Daniels was housed, permitted Daniels to be housed in the jail as an adult in violation of Michigan law; that in doing so, Tuscany was deliberately indifferent to Michigan statutes governing the placement of juveniles being detained on criminal charges; and this deliberate indifference violated Daniels's Eighth Amendment Right to be free from cruel and unusual punishment. Daniels, however, fails at the first step of his argument. He has not presented evidence that Tuscany violated Michigan law.

As a general rule, in Michigan juveniles may not be confined in a jail while awaiting trial. M.C.L.A. § 764.27a(1). A judge may, however, order a juvenile to be detained in a jail before trial if he is "considered to be a menace to other children, or [he] may not otherwise be safely detained." M.C.L.A. § 764.27a(2). If a juvenile is housed in a jail, then he must be kept "in a room or ward

out of sight and sound from adults." M.C.L.A. § 764.27a(2). The evidence before the district court establishes that the judge ordered Daniels to be housed at the jail and to be segregated from the adult population. The evidence further establishes that Daniels was at no time kept where he was within either sight of or sound from adults. The procedure followed by the judge and the jail staff in detaining Daniels follows Michigan law to the letter.

Daniels also alleges that Tuscany violated Daniels's constitutional rights under the Fifth, Eighth, and Fourteenth Amendments by confining Daniels to twenty-four hour lock-down, depriving him of exercise, dressing him in a suicide gown that did not completely close in the back as opposed to a jail uniform, denying him access to a shower and personal hygiene products such as soap and toothpaste, and denying him visitors. Daniels asserts that there is a material question of fact as to whether Tuscany had a legitimate purpose for imposing such restrictions. The record demonstrates, however, that Daniels told jail personnel of his suicidal thoughts. The deprivations imposed on Daniels were affirmative steps to secure Daniels's well-being, in furtherance of the jail staff's legitimate and non-punitive purpose of preventing Daniels's suicide or injury. The district court held, and we agree, that Daniels's attempts to create a genuine issue of fact with regard to this claim are without support in the record.

## II.

Daniels complains that Anchor Bay and Woodside denied him due process when, without affording him a hearing, they deprived him of his property interest in a free public education by terminating his participation in the Skill Quest program in which he was enrolled at the time of his arrest and pre-trial detention, and refusing to permit him to enroll again in the program immediately following his release from detention. "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). State statutes or rules create protected property interests by entitling a citizen to certain benefits. *Goss v. Lopez*, 419 U.S. 565, 573 (1975) ("Here, on the basis of state law, appellees plainly had legitimate claims of entitlement to a public education.") There is no question that Michigan law gave Daniels a protected property interest in a free public education. M.C.L.A. Const. Art. 8, §2; *see, e.g. Goss*, 419 U.S. at 574. The issue before us, however, is whether Daniels has a legitimate claim of entitlement to Anchor Bay's program of *alternative* free public education.

The Michigan Constitution mandates "free public *elementary* and *secondary schools* as defined by law," rather than simply providing a broad right to "public education." M.C.L.A. Const. Art. 8, §2 (emphasis added). Michigan law also requires residents between the ages of six and sixteen (through the sixteenth birthday) to attend school. M.C.L.A. §380.1561(1). There is no question that Daniels had the right to attend his local public high school. We conclude, however, that he chose to forego that right when he dropped out of Anchor Bay High School shortly after his sixteenth birthday. And we note that Daniels does not claim that he attempted to re-enroll in high school after voluntarily withdrawing or that he was prevented from doing so.

Neither the Michigan Constitution nor any other Michigan law mandates that school districts provide alternative education. *See* MICH. ATT'Y GEN. REP., No. 6271, p. 13 (February 7, 1985). But if the state—through the school district—creates in people of the plaintiff's class in general an entitlement to an alternative education, the state may not withdraw that entitlement without adequate process. *Goss*, 419 U.S. at 574. We have not addressed in a published opinion the question of whether Michigan residents are entitled to alternative education, although in an unpublished opinion, we have held that Michigan residents have no property interest in adult education programs. In *Mercado v. Kingsley Area Schools*, 956 F.2d 269, 1992 WL 34471 (6th Cir. 1992), we said that a Michigan student's participation in adult education programs was analogous to interscholastic

athletics, rather than to public education, inasmuch as Michigan law did not require school districts to offer either interscholastic athletic programs or adult education programs. *Id*. at \*\*3. We think that *Mercado*'s reasoning is sound but it is not dispositive of Daniels's claim that although Anchor Bay is not required to offer alternative education programs, by doing so it has created an entitlement to those programs.

Although it is under no mandate to do so, Anchor Bay has chosen to establish Skill Quest, an alternative education program for individuals such as Daniels, who are under the age of 19, have no high school diploma, and have been out of school for at least one semester. Importantly, however, Anchor Bay has limited participation in that program in two significant ways. First, the superintendent has discretion over who may be admitted to the program. Second, in order to remain in the program, students must abide by the program policies, including the attendance policy, and failure to comply with the attendance policy results in automatic loss of course credit.

In order to establish a property interest in participating in the Skill Quest program, Daniels must demonstrate that he has a "legitimate claim of entitlement" to that participation. *Goss*, 419 U.S. at 573; *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1108 (6th Cir. 1995). Daniels cannot demonstrate any such entitlement because participation in the Skill Quest program is entirely at the discretion of the superintendent, and continues only so long as the participant abides by the program's rules and policies. Daniels therefore has no property right in the alternative education he sought.

Because Daniels cannot demonstrate any property right to alternative education in the Skill Quest program, he cannot demonstrate that Anchor Bay or Woodside denied him due process by enforcing the program's automatic loss of credit resulting from his absence from class during his pre-trial detention, or by refusing to permit him to re-enroll after his release from detention.

**III**.

For the foregoing reasons, we **AFFIRM** the orders of the district court granting summary judgment to Ronald Tuscany and to Anchor Bay School District. We **REVERSE** the district court's order denying summary judgment to Leonard Woodside, and **REMAND** this matter to the district court with instructions to enter an order granting summary judgment to Woodside.