**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0719n.06**
**Filed: August 17, 2005**

**No. 04-5923**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| HGB MARKETING, INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| POMEROY COMPUTER RESOURCES, | ) | KENTUCKY |
| INC., | ) | |
| | ) | |
| Defendant-Appellee. | ) | OPINION |

Before: BATCHELDER, GIBBONS, and McKEAGUE, Circuit Judges.

  **DAVID W. McKEAGUE, Circuit Judge.** HGB Marketing, Inc. ("HGB") brought suit against Pomeroy Computer Resources, Inc. ("Pomeroy" or "PCR") alleging that Pomeroy breached a contract to pay HGB commission on profits earned by Pomeroy on sales of certain computer equipment purchased from a third party, EMC Corporation. In the alternative, HGB sought recovery on a theory of unjust enrichment or quantum meruit. The district court granted summary judgment in favor of Pomeroy on all claims. HGB appeals, arguing that there are genuine issues of material fact regarding whether Pomeroy breached its contract with HGB, whether Pomeroy breached the implied duty of good faith, and whether HGB is entitled to recover on a theory of unjust enrichment or quantum meruit. For the reasons set forth below, we affirm the judgment of the district court.

## I. BACKGROUND

  In June of 2001, Hildegarde Gutman-Beyor, CEO of HGB, contacted representatives from Pomeroy and offered to use her existing relationship with EMC, a corporation she knew was looking

for companies to buy its computer equipment, to help Pomeroy enter into such an arrangement with

EMC. Pomeroy expressed interest in HGB's overtures and Gutman-Beyor began introducing

representatives from Pomeroy and EMC and coordinating discussions. On June 28, 2001, HGB and

Pomeroy signed a Commission Agreement which detailed the remuneration HGB was to receive

from Pomeroy for these efforts. The Commission Agreement provides as follows:

> 1. As compensation for HGB originating, introducing and assisting in managing the Customer Agreement executed between PCR and EMC Corporation. PCR agrees to pay HGB a commission(s) computed as described below.
>
> 2. The commission(s) will be one-third (1/3) of the net proceeds of the fees and monies earned by P[CR] as a result of managing the Customer Agreement with EMC. Commission structure to be negotiated if average quarterly gross profit margin falls below 10%, to be mutually agreed upon by both parties.
>
> 3. The net proceeds will be defined as the gross profit earned by PCR less any interest expense associated with financing the costs of the equipment in the Customer Agreement and all Exhibits associated.
>
>> a. All costs associated with the administrations of the Customer Agreement (billing, postage, telephone, etc.) will be borne by PCR and will not be included as part of the "net proceeds".
>>
>> b. A 1.5% fee will be assessed against gross profit for all handling, shipping warehousing interest expenses to determine "net proceeds".
>>
>> c. Payment to HGB will be made on a quarterly basis 30 days from the final payments to PCR of the total buy in a dollar amount.
>
> 4. The agreement shall remain in full force for a period of twelve (12) months from the date of signature by both parties.
>
> 5. HGB unconditionally agrees to purchase 20% or THREE MILLION DOLLARS ($3,000,000) of the EMC products referenced on Exhibit A of the Customer Agreement with EMC should such product not be sold by September 28, 2001. HGB shall remit payment COD to PCR or its designated common carrier for any and all EMC products it is obligated to purchase hereunder on September 29, 2001.
>
> On the same day the Commission Agreement was signed, EMC and Pomeroy signed a

2

Customer Agreement which provided that Pomeroy would purchase $15 million worth of equipment from EMC. EMC and Pomeroy ultimately cancelled the Customer Agreement without transacting any business according to its terms. However, in the year after the Customer Agreement was signed, they did engage in several transactions separate from the Customer Agreement. During this time Pomeroy purchased approximately $32 million worth of computer equipment from EMC. In contrast to the terms of the cancelled Customer Agreement, each of these transactions occurred after Pomeroy received an order from a consumer. The Customer Agreement contemplated Pomeroy buying a large quantity of computer equipment and bearing the risk that it would not be able to resell it.

In December of 2001, HGB contacted Pomeroy to ask when HGB would begin receiving its commission payments pursuant to the Commission Agreement. Pomeroy informed HGB that EMC had cancelled the Customer Agreement due to declining economic conditions and, therefore, Pomeroy did not owe HGB any commissions. HGB, in turn, communicated its position that the Commission Agreement entitled it to a portion of the substantial profits Pomeroy garnered as a result of its business contacts with EMC, regardless of whether they were earned under the Customer Agreement. Pomeroy and HGB were unable to come to an understanding and litigation ensued.

On April 11, 2003 HGB filed suit against Pomeroy in the United States District Court for the Eastern District of Kentucky alleging breach of contract or, in the alternative, seeking damages on a theory of unjust enrichment or quantum meruit. The district court granted Pomeroy's motion for summary judgment. It concluded that the Commission Agreement only entitled HGB to a percentage of the net proceeds of one transaction between Pomeroy and EMC, the Customer Agreement. Because that agreement was never performed, no commission was due. The district

3

court also determined that both unjust enrichment and quantum meruit recovery were unavailable under Kentucky law because an express contract existed which governed what HGB would be paid. HGB filed a timely notice of appeal.

## II. ANALYSIS

### A.      Standard of Review

This court reviews an order granting summary judgment de novo. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005); *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005); *Valentine-Johnson v. Roche*, 386 F.3d 800, 807 (6th Cir. 2004). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Johnson*, 398 F.3d at 873; *Daniels*, 396 F.3d at 734; *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004). When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Johnson*, 398 F.3d at 873; *Daniels*, 396 F.3d at 734; *Valentine-Johnson*, 386 F.3d at 807. Any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004). Nevertheless, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter*, 385 F.3d at 689-90; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

4

**B.    Breach of Contract**

The district court did not err when it granted summary judgment in Pomeroy's favor on HGB's breach of contract claim. HGB asserts two errors in the district court's analysis of this issue, but neither argument is persuasive. First, HGB maintains that it is entitled to the inference that the Commission Agreement obligated Pomeroy to pay commissions on the profits it garnered on all of its transactions with EMC for twelve months, not just the profits it garnered from the Customer Agreement. HGB points to three provisions in the contract which it claims support its view. The contract states that it is in force for a period of one year and makes references to quarterly payments and assessment of quarterly profits. HGB asserts that these provisions indicate that the parties contemplated a series of transactions between Pomeroy and EMC taking place over a span of time. Therefore, HGB argues, it is reasonable to infer that Pomeroy and HGB intended commissions to be paid on profits garnered from a series of transactions, not solely the Customer Agreement. Consequently, HGB urges that the district court was required to give it the benefit of this reasonable inference at the summary judgment stage.

HGB is certainly correct that it is entitled to all reasonable inferences supported by the evidence at the summary judgment stage. However, given the terms of the Commission Agreement, the inference HGB posits is not reasonable. HGB avoids discussing the core provisions of the contract, which state that HGB will be paid commission for "introducing and assisting in managing the Customer Agreement" and calculate that commission based on a percentage of the profits Pomeroy would earn "as a result of managing the Customer Agreement." There are no references anywhere in the contract to profits which might arise from other transactions between Pomeroy and EMC. HGB criticizes the district court's construction of the contract as being a product of "myopic

5

focus on isolated phrases," but HGB's alternative construction suffers from the very deficiency it alleges. In fact, HGB urges this court to turn a completely blind eye to the core provisions of the contract which identify the Customer Agreement as the basis for computing HGB's commissions and to narrowly focus on a few ancillary provisions and extrapolate the terms of the contract from a nebulous sense created by those provisions. The district court did not err by rejecting this approach.

Although the district court did not explicitly discuss the contract provisions HGB focuses on, those provisions do not undermine its conclusion that the Commission Agreement only provided for commissions based on profits earned from the Customer Agreement. The contract provisions HGB cites do tend to indicate that the parties contemplated that commissions under the agreement would be paid over a period of time. However, this does not necessarily mean that the parties intended the underlying transactions between Pomeroy and EMC to take place over time. The commission payments were not due until after Pomeroy resold the equipment it purchased from EMC and was paid by its customers. Fifteen million dollars worth of computer equipment would take at least some period of time to resell and obtain payment. Since the district court's construction of the Commission Agreement is the only one which gives meaning to all of the provisions of the contract, it is the only reasonable construction. There is no basis in the text of the contract or any other facts to reasonably infer that the scope of the contract covered a broad range of Pomeroy–EMC transactions, as HGB maintains.

HGB goes on to argue that even if the district court's construction of the Commission Agreement is upheld, there is a triable issue regarding whether the Customer Agreement between Pomeroy and EMC was actually cancelled. However, HGB is unable to point to any evidence which

6

creates such an issue. HGB points out that different individuals involved cited different reasons for cancelling the Customer Agreement, but all agreed that the Customer Agreement had been cancelled. HGB cites the testimony of Richard Jackman, Pomeroy's vice-president of sales, who initially stated that he thought goods were shipped from EMC to Pomeroy pursuant to the Customer Agreement. Jackman clarified his testimony, however, admitting that he merely assumed that to be the case and that he had no personal knowledge of the shipment. Moreover, Jackman testified that the Customer Agreement had been cancelled. Finally, HGB notes that there was no documentation of the cancellation until it contacted Pomeroy in December of 2001 to inquire about its commission payments. This also fails to create a genuine issue of fact. There is documentation in the record establishing that the Customer Agreement was, in fact, cancelled. Representatives of both parties to the Customer Agreement testified that the agreement was cancelled. HGB has not pointed to any evidence in the record which disputes this testimony and documentation. The district court did not err by concluding that there was no genuine issue of material fact on this issue. Summary judgment was properly awarded to Pomeroy on the breach of contract claim.

## C.    Breach of the Implied Duty of Good Faith

HGB maintains that it was entitled to a jury trial on its claim that Pomeroy breached its implied duty of good faith by cancelling the Customer Agreement. Below HGB only briefly raised this issue in the context of its breach of contract claim. The district court observed that while there might be an issue concerning exactly why Pomeroy and EMC cancelled the Customer Agreement, the reason was not material to determining whether Pomeroy breached its contract with HGB. On appeal, HGB goes beyond its initial argument to the district court and asserts that Pomeroy violated the duty of good faith which Kentucky law implies in every contract.

7

This court generally will not review issues raised for the first time on appeal. *Barner v. Pilkington N. Am.*, 399 F.3d 745, 749 (6th Cir. 2005); *Lepard v. NBD Bank*, 384 F.3d 232, 236 (6th Cir. 2004); *United States v. Ninety-Three (93) Firearms*, 330 F.3d 414, 424 (6th Cir. 2003). The appellate court's function is "to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order." *Barner*, 399 F.3d at 749.

Neither will this court consider a claim which was not pled in the complaint. *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 714 (6th Cir. 2001). There is no language in HGB's complaint which could be construed as asserting a distinct claim for breach of the implied duty of good faith. Since the claim was neither pled in the complaint nor otherwise properly presented to the district court in the first instance, it is not properly before us on appeal. The district court did not err by failing to address this theory of relief, and HGB's claim that there is a genuine issue of material fact concerning whether Pomeroy breached the implied duty of good faith will not be further considered.[1]

**D.      Unjust Enrichment/Quantum Meruit**

HGB's final argument is that it should have been able to submit to the jury the issue of whether it was entitled to recover based on a theory of unjust enrichment or quantum meruit. HGB acknowledges that Kentucky law does not allow such claims where "there has been an explicit contract which has been performed." *Tractor & Farm Supply, Inc. v. Ford New Holland, Inc.*, 898

---

[1]Although not reaching this issue, the Court notes that it is far from clear that there is sufficient evidence in the record to support the contention that Pomeroy was responsible for cancelling the Customer Agreement with EMC and that it did so with the specific purpose of circumventing its duty to pay HGB commissions pursuant to the Commission Agreement. Instead, the weight of the evidence indicates that EMC was responsible for cancelling the Customer Agreement.

F. Supp. 1198, 1206 (W.D. Ky. 1995). HGB contends that unjust enrichment and quantum meruit are viable theories of recovery because Pomeroy did *not* perform its obligations under the Commission Agreement. This assertion is based entirely on HGB's view that the Commission Agreement obligated Pomeroy to pay commissions on the net profits resulting from all of its transactions with EMC over the course of one year. This construction has been discussed and rejected. The only reasonable construction of the Commission Agreement is that the cancellation of the Customer Agreement between Pomeroy and EMC relieved Pomeroy of any duty to pay HGB a commission. Since Pomeroy was under no obligation to pay HGB, there is no aspect of the Commission Agreement which Pomeroy failed to perform. The factual predicate of HGB's argument–that Pomeroy did not perform its obligations under the Commission Agreement–is invalid. The district court did not err in granting summary judgment in favor of Pomeroy on these claims.

### III. CONCLUSION

The district court did not err when it granted summary judgment in favor of Pomeroy on all claims. Accordingly, the judgment of the district court is **AFFIRMED**.

9