NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0233n.06
Filed: April 3, 2006

Nos. 04-6001, 04-6087

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| THE COY/SUPERIOR TEAM, | ) | |
| | ) | |
| Plaintiff-Appellant | ) | ON APPEAL FROM THE |
| Cross-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| BNFL, INC., | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellee | ) | |
| Cross-Appellant. | ) | |

BEFORE:    MOORE and McKEAGUE, Circuit Judges; and  POLSTER, District Judge.[*]

**McKeague, Circuit Judge**. This case arises from a subcontract to perform demolition and

salvage work at a switchyard located in the East Tennessee Technology Park ("ETTP").  After the

completion of the work the subcontractor, Coy/Superior, sued the contractor, BNFL, for breach of

contract, negligent misrepresentation, fraud, and declaratory judgment that BNFL is responsible for

certain asbestos-laden materials.  Both parties filed motions for summary judgment.  The district

court granted the declaratory judgment sought by Coy/Superior, but granted most of BNFL's motion

for summary judgment on the remaining claims.  Part of the breach of contract claim survived

summary judgment and was resolved at a bench trial.  Coy/Superior timely appealed both the grant

---

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District
of Ohio, sitting by designation.

of summary judgment in favor of BNFL and portions of the findings of fact from the bench trial.

BNFL timely cross-appealed the grant of Coy/Superior's motion for summary judgment on the

declaratory judgment claim. For the reasons set forth below, we reverse the district court's entry

of summary judgment in favor of Coy/Superior on the declaratory judgment claim and affirm the

remainder of the district court's determinations.

## I. BACKGROUND

In 1997, BNFL entered into a prime contract with the Department of Energy ("DOE") to

decontaminate, decommission, and recycle three former uranium processing buildings at DOE's East

Tennessee Technology Park ("ETTP") near Oak Ridge, Tennessee. Under its contract with DOE,

BNFL subcontracted out most of the switchyard demolition, scrap work, and related tasks to

subcontractors with expertise in their respective fields.

This case centers around four synchronous condensers that BNFL sought to have removed

from the K-792 switchyard. Large copper cable conductors ran from the condensers into

powerhouses and then continued underground through vaults into manholes underneath process

buildings. Each condenser contained significant amounts of various metals, including copper

wiring, some of which was wrapped in insulating material. They were constructed in the 1950's and

each weighed approximately two hundred tons. The condensers were raised approximately twenty

feet from the ground on concrete platforms.

In November of 1999, BNFL issued a Request for Proposals ("RFP") for the demolition and

scrapping of the four condensers in the K-792 switchyard, the removal of cable and cable trays from

K-791 (one of the buildings located in the switchyard), and removal of other scrap material from the

switchyard and surrounding area. After the RFP was issued, BNFL conducted an open bid process that included various pre-bid meetings in which BNFL answered questions from potential bidders. Prior to making the bids, each contractor, including Coy/Superior, had ample opportunity to inspect the condensers to estimate their recycle value.

Coy/Superior submitted a winning bid of $89,000. The bid amount was lower than the anticipated cost of demolition and was based in part on Coy/Superior's assessment of the salvage value of equipment and material. A contract between Coy/Superior and BNFL was executed on January 6, 2000. The contract provided that Coy/Superior would receive $89,000 and would retain all recycle value in exchange for the dismantling and removal of the four condensers, removal of certain cable from K-791, and removal of other scrap material from the switchyards.

At the time the subcontract was executed, BNFL had no knowledge of the actual presence of asbestos in the condensers. BNFL's statements at the pre-bid meeting disclosed the possibility that asbestos would be encountered, and BNFL made no warranty at the pre-bid meeting or in the subcontract that it had performed a thorough inspection of the condensers. The subcontract does state that "BNFL has removed all known asbestos-containing materials." The subcontract also states that if Coy/Superior "encounters any suspect materials in the execution of its work, it shall notify the BNFL STR [Subcontract Technical Representative] immediately." BNFL acknowledges that it was responsible for wastes generated and for asbestos abatement during the period that the condensers remained at the BNFL worksite.

After executing the subcontract — but before the condensers had been removed from the worksite — Coy/Superior learned about certain potential asbestos by reading operating manuals it

found while working on the condensers. A Coy/Superior employee informed BNFL of his suspicion of the presence of asbestos. BNFL arranged for testing which ultimately did indicate the presence of asbestos. BNFL arranged for abatement of the asbestos. On March 21, 2000, shortly after BNFL first tested for asbestos in the locations suggested by Coy/Superior, Coy/Superior asked for additional testing in specific, designated locations on the condensers, and again BNFL fulfilled its obligation by testing for asbestos. In that instance, however, no asbestos was detected.

In May of 2000, Coy/Superior loaded the pieces of the condensers onto its vehicles and removed them from the BNFL worksite. Coy/Superior took the large condenser pieces to another site, known as "Portal 10," within the ETTP that Coy/Superior leased from a party unrelated to BNFL. While the condensers were still located at its Portal 10 worksite, Coy/Superior became aware that there was additional asbestos in the condensers. On July 13, 2000, while attempting to sell some of the materials salvaged from the condensers, Coy/Superior was asked by a copper buyer in Indiana to guarantee that asbestos was not present in the wiring. Testing revealed the presence of asbestos. Coy/Superior contacted BNFL and notified them of the situation. Ultimately, negotiations broke down regarding who was responsible for properly disposing of the asbestos located at the Portal 10 site. Other disagreements regarding the performance of the subcontract surfaced as well. Coy/Superior sued BNFL for breach of contract, negligent misrepresentation, fraud, and declaratory judgment that BNFL is responsible for the asbestos at the Portal 10 site.

BNFL moved for summary judgment on all of the claims while Coy/Superior filed a motion for summary judgment on its declaratory judgment claim. The district court granted Coy/Superior's motion for summary judgment and entered an order declaring that BNFL "is the entity responsible

for the asbestos abatement at issue in this case." The district court granted BNFL's motion for summary judgment on the negligent misrepresentation and fraud claims and granted it in part as to the contract claim. A bench trial was conducted to determine the lone contract claim which survived. The district judge entered findings of fact and conclusions of law stating that BNFL breached the subcontract by allowing a third party to remove certain copper cable from the K-791 building, but did not breach the contract by failing to adequately test the synchronous condensers for asbestos. Finally, the district judge calculated damages based on the conclusion that BNFL improperly allowed ten thousand pounds of copper cable to be removed which BNFL was entitled to under the subcontract. Coy/Superior timely appealed and BNFL timely filed a cross-appeal.

## II. ANALYSIS

### A. Standard of Review

#### 1. Summary Judgment

This court reviews an order granting summary judgment de novo. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005); *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005); *Valentine-Johnson v. Roche*, 386 F.3d 800, 807 (6th Cir. 2004). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Johnson*, 398 F.3d at 873; *Daniels*, 396 F.3d at 734; *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004). When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986); *Johnson*, 398 F.3d at 873; *Daniels*, 396 F.3d at 734; *Valentine-Johnson*, 386

F.3d at 807. Any direct evidence offered by the non-moving party in response to a summary

judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004).

Nevertheless, the "mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be no

*genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

(emphasis in original); *accord Leadbetter*, 385 F.3d at 689-90; *Weaver v. Shadoan*, 340 F.3d 398,

405 (6th Cir. 2003).

### 2. Motion to Amend

The Sixth Circuit generally reviews a district court's denial of a motion to amend a complaint

for abuse of discretion. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001); *Parry v.*

*Mohawk Motors of Mich.*, 236 F.3d 299, 306 (6th Cir. 2000). However, when the denial is based

upon the district court's legal conclusion that the proposed amendment would be futile, i.e., that it

would not withstand a motion to dismiss, the decision is reviewed de novo. *Wade*, 259 F.3d at 459;

*Parry*, 236 F.3d at 306.

### 3. Findings of Fact

Pursuant to Federal Rule of Civil Procedure 52(a), findings of fact by a district judge should

not be reversed unless "clearly erroneous." A finding of fact is clearly erroneous when, although

there is evidence to support it, "the reviewing court on the entire evidence is left with the definite

and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*,

470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395

(1948)); *accord Gross v. Comm'r*, 272 F.3d 333, 343 (6th Cir. 2001); *Hamilton v. Carell*, 243 F.3d

992, 997 (6th Cir. 2001). When the findings rest on credibility determinations, Rule 52 demands

even greater deference. *Anderson*, 470 U.S. at 575; *Hamilton*, 243 F.3d at 997-98; *In re Cleveland*

*Tankers, Inc.*, 67 F.3d 1200, 1205 (6th Cir. 1995).

**B.     Declaratory Judgment**

The Second Amended complaint contains a request for a declaratory judgment "to the effect

that Coy/Superior is not the owner of the asbestos-laden synchronous condensers and has no

responsibility for their disposal . . . ." The parties filed cross motions for summary judgment on this

claim. The district court granted Coy/Superior's motion. BNFL challenges this ruling on cross-

appeal. This is the central issue in this case and will, therefore, be addressed first.

After dismantling the synchronous condensers, Coy/Superior moved the pieces to its own

worksite (known as Portal 10) which was also located on the ETTP. The presence of asbestos was

discovered while the condensers were located at the Portal 10 site. BNFL refused to take the

asbestos-laden condenser pieces back from Coy/Superior. Coy/Superior alleges that BNFL still has

title to and responsibility for the condensers. BNFL argues that liability for the condensers and the

asbestos they contain was transferred to Coy/Superior under the following provision of the

subcontract:

> **C.1.13 Regulatory Responsibilities**
>
> The Subcontractor(s) shall assume total regulatory responsibility, liability, and title
> to the wastes and recyclable material upon loading onto the Subcontractor's vehicle
> at the ETTP site. Any wastes and/or by-products generated during shipment, storage,
> disposal and/or other management of the waste shall be the responsibility of the

> Subcontractor(s) and shall be disposed via approved disposal methods and procedures.

Coy/Superior has argued that BNFL's reliance on this contract provision is inapposite because it does not govern hazardous waste, title to and liability for hazardous waste could not legally be transferred to Coy/Superior, BNFL did not have authority to transfer title of the hazardous waste to Coy/Superior, and even if the contract provision could transfer title and liability it would not do so until the condensers were loaded onto vehicles for transportation off the ETTP.

The district court focused its analysis on the argument that section C.1.13 should be read to transfer title only when the materials were loaded onto Coy/Superior's vehicle for their ultimate removal from the ETTP, and not upon loading simply to be moved to Coy/Superior's worksite at Portal 10. The district court determined that section C.1.13 was ambiguous as to precisely when title and environmental liability transferred because both possible interpretations were reasonable. The district court further determined that BNFL drafted the subcontract, the ambiguity was latent, and Coy/Superior relied on its interpretation in submitting its bid. Consequently, the district court applied the doctrine of *contra proferentem* and enforced Coy/Superior's supposed interpretation of the provision. An order was entered declaring that BNFL was owner of and responsible for the asbestos-laden condenser remnants located at the Portal 10 worksite.

In its cross-appeal, BNFL challenges the district court's conclusion that Coy/Superior relied on its interpretation of section C.1.13 that title to and liability for asbestos waste materials would not be transferred to Coy/Superior until those materials were loaded onto Coy/Superior's vehicles for the purpose of removing them from the ETTP. BNFL points to the well-settled rule that "where

a contractor seeks recovery based on his interpretation of an ambiguous contract, he must show that he relied on this interpretation in submitting his bid." *Lear Siegler Management Servs. Corp. v. United States*, 867 F.2d 600, 603 (Fed. Cir. 1989). The burden of proving reliance on the claimed interpretation thus falls on the contractor. *Fruin-Colnon Corp. v. United States*, 912 F.3d 1426 (Fed. Cir. 1990).

BNFL asserts that Coy/Superior did not offer any evidence at all to support its claim that it relied on *any* interpretation of section C.1.13 at the time it prepared its bid. BNFL points out that Coy/Superior has consistently maintained that title to and liability for the asbestos wastes could not and did not transfer to Coy/Superior at any point in time in spite of the language of section C.1.13. The only time Coy/Superior has departed from this argument is in a brief, unsupported argument in its summary judgment motion that under section C.1.13 "title would pass when loaded on vehicles for shipment off ETTP to a disposal site." The district court focused on this statement. Even though Coy/Superior did not point to evidence which established reliance on this interpretation, the district court examined the evidence before it and was satisfied that there was evidence of such reliance.

The evidence the district court pointed to in support of its finding of reliance primarily consisted of references indicating that Coy/Superior did not intend to do any asbestos work as part of the project. Coy/Superior's accepted proposal, as well as certain testimony, does indicate that Coy/Superior did not believe asbestos work would be part of the deal. However, that does not establish that at the time it submitted its bid Coy/Superior was relying on its interpretation that under section C.1.13, title to and liability for any asbestos wastes would not be passed to Coy/Superior until the materials were loaded for ultimate delivery off of the ETTP. There is no testimony,

evidence, or even allegation from Coy/Superior that at the time it submitted its bid that was its understanding of section C.1.13. Coy/Superior does not even attempt to argue this point on appeal. BNFL is correct that the district court erred in applying the doctrine of *contra proferentem* because Coy/Superior did not establish the necessary element of reliance.

The district court's application of the doctrine of *contra proferentem* rendered it unnecessary for the district court to address Coy/Superior's primary argument that section C.1.13 could not transfer title to or liability for the asbestos waste to Coy/Superior at any point in time. However, the district court did address, and reject, this argument in the context of granting summary judgment in favor of BNFL on Coy/Superior's fraud claim. Since summary judgment on the fraud claim has also been appealed, the contours of Coy/Superior's argument have been fully developed both before the district court and on appeal. Therefore, this court is in a position to address the issue instead of remanding to the district court to reconsider the cross motions for summary judgment on the declaratory judgment claim.

The district court found that the language of section C.1.13 of the subcontract, which provides that "[plaintiff] shall assume total regulatory responsibility, liability and title to the waste . . ." clearly and unambiguously shifted all the responsibility for the asbestos to Coy/Superior. Coy/Superior claims that this holding was error because federal law prohibits BNFL from effectively transferring title to or liability for the asbestos to another party. Section 107(e)(1) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") states the following:

> No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

42 U.S.C. § 9607(e). This provision does not even make any reference to title of hazardous wastes, let alone restrict the transfer of such title as Coy/Superior claims. It only governs the transfer of liability for such wastes. BNFL argues that this statute permits the transfer of liability for the asbestos to Coy/Superior as provided for in section C.1.13 of the subcontract.

The Sixth Circuit has held that § 107(e)(1) permits parties to contractually shift CERCLA and other environmental liabilities by means of an indemnity agreement. *Olin Corp. v. Yeargin Inc.*, 146 F.3d 398, 407 (6th Cir. 1998); *Niecko v. Emro Marketing Co.*, 973 F.2d 1296, 1300-01 (6th Cir. 1992). Although the section does not allow a party who is responsible for cleanup costs to escape liability vis-a-vis the federal government, parties may still contractually allocate the costs of environmental clean up among themselves. *Niecko*, 973 F.2d at 1300-01. "However, whether a particular agreement has shifted such liabilities is a question of state law." *Olin*, 146 F.3d at 407. Predicting Tennessee law, the Sixth Circuit has held that an agreement shifts environmental liability if it "contains a clear and unambiguous reference to such costs." *Id.*

Coy/Superior acknowledges that financial responsibility for environmental cleanup costs can be shifted contractually through insurance, a hold harmless agreement, or an indemnity agreement, but asserts that section C.1.13 of the subcontract is not an indemnity agreement as argued by BNFL. Coy/Superior does not elaborate on this argument or provide any support for the argument that a

clause such as the one at issue does not transfer liability because it is not explicitly phrased as an indemnity clause. In fact, the case law shows that parties can contractually transfer liability under CERCLA by simply using an "as is" clause. *Niecko*, 973 F.2d at 1300-01; *Velsicol Chemical Corp. v. Reilly Indus*., 67 F. Supp. 2d 893, 905 (E.D. Ten. 1999), *summarily aff'd*, 229 F.3d 1155 (6th Cir. 2000) (unpublished). If a simple "as is" clause in a real estate contract can be sufficient to transfer environmental liability, then section C.1.13 of the subcontract was certainly sufficient to transfer liability.

Coy/Superior argues that section C.1.13 could not transfer liability for the asbestos to Coy/Superior because such a transfer is legally impossible. The case law addressing § 107(e)(1) of CERCLA makes it clear that such a contractual shift of liability is possible and was properly executed. Coy/Superior does not offer any other argument except its oft-repeated, but unsupported, mantra that title to the asbestos could not be shifted to Coy/Superior. However, since liability for the asbestos was properly transferred to Coy/Superior, there is no reason to determine who had title to the asbestos-laden materials. Since Coy/Superior's arguments are not sufficient to support the declaratory judgment that BNFL is responsible for the asbestos, the district court erred when it granted summary judgment in Coy/Superior's favor on that claim. BNFL is entitled to summary judgment as a matter of law on the declaratory judgment claim.

## C.    Motion to File Third Amended Complaint

On December 10, 2003 (four months before trial was scheduled), Coy/Superior filed a motion for leave to file a third amended complaint. The district court denied the motion on the basis that the expanded allegations of intentional fraudulent conduct did not add a new claim or otherwise

add anything of significance. The second amended complaint already included a fraud claim. Moreover, the district court noted that since there was no significant difference, requiring BNFL to answer a third amended complaint would result in undue prejudice and delay. Coy/Superior has not demonstrated that this ruling was an abuse of discretion.

After a responsive pleading has been filed, leave to amend must be freely given when justice so requires. Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Nevertheless, leave to amend "should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). Coy/Superior argues that justice required granting leave to file its proposed third amended complaint because that version of the complaint included particular allegations of fraud which Coy/Superior did not include in the second amended complaint because it did not become aware of the underlying facts until November 20, 2003. BNFL points out that before granting summary judgment on Coy/Superior's fraud claim, the district court had been presented with, and considered, both the newly discovered information and Coy/Superior's legal arguments concerning how it affected the fraud claim. Coy/Superior counters that the district court's consideration of the new information at the summary judgment stage demonstrates that the district court committed clear error when it denied the motion to file a third amended complaint.

The district court refused to permit an amended pleading at a late stage in the litigation where that amended pleading did not add a new defendant or cause of action, but merely included additional information about an existing claim which had been revealed in the course of discovery. The second amended complaint already stated a cause of action for fraud. The district court

- 13 -

correctly noted that at trial Coy/Superior would be able to submit any evidence revealed in the course of discovery which tended to support that cause of action. Similarly, while considering the motion for summary judgment as it related to the fraud claim, the district court considered all the evidence presented including the most recently discovered information. Therefore, permitting the motion to file the proposed third amended complaint would not have accomplished any practical purpose. In light of these circumstances, the district court's conclusion that permitting the amendment would have caused undue prejudice and delay was not an abuse of discretion.

**D.     Fraud**

The district court granted BNFL summary judgment on Coy/Superior's fraud claim on the basis that Coy/Superior had not put forth any competent evidence in support of its fraud allegations. The district court examined each of four specific fraud allegations individually. The only aspect of the district court's decision which Coy/Superior challenges on appeal is its determination that section C.1.13 of the subcontract legally shifted regulatory liability for the asbestos to Coy/Superior. Since that liability shift was both legal and clearly stated in the subcontract, the district court determined that BNFL was entitled to judgment as a matter of law on the claim that it had fraudulently attempted to illegally shift responsibility for disposing of asbestos to Coy/Superior. Coy/Superior's entire argument on appeal rests squarely on its assertion that it was legally impossible for BNFL to shift liability for the asbestos to Coy/Superior. Since this argument has already been examined and rejected, there is not basis to overturn the district court's dismissal of the fraud claim.

**E.     Breach of Contract**

The district court granted summary judgment in favor of BNFL on two aspects of Coy/Superior's breach of contract claim. The district court rejected Coy/Superior's arguments that BNFL breached the terms of the subcontract by entering into a salvage-value contract when there was no salvage value and that BNFL breached its implied duty of good faith and fair dealing by failing to thoroughly test the synchronous condensers for asbestos before awarding the subcontract. Coy/Superior appeals the ruling on both of these issues.

The district court ruled that BNFL was entitled to judgment as a matter of law on Coy/Superior's first breach of contract argument because the subcontract did not impose a duty on BNFL to guarantee that the transaction would be profitable for Coy/Superior. Coy/Superior argues on appeal that it has never claimed that BNFL had a contractual duty to ensure Coy/Superior profited from the transaction. Instead, Coy/Superior states that it seeks the value of material that should have been salvageable but was not. According to its reasoning, the fact that the contract provided that Coy/Superior would "retain all recycle value" meant that BNFL had a duty to ensure that there was at least some amount of recycle value. If this argument is truly not a claim for a guarantee of profitability, then *any* amount of recycle or salvage value which Coy/Superior received would be sufficient to discharge BNFL's alleged duty. Coy/Superior does not contest the fact that in the course of performing the subcontract it recovered thousands of pounds of various metals which it sold to scrap metal dealers. In light of the uncontested evidence that Coy/Superior did receive at least some salvage value, summary judgment in BNFL's favor on this issue was appropriate.

Coy/Superior also challenges the district court's grant of summary judgment in BNFL's favor on the claim that BNFL breached its duty of good faith and fair dealing by failing to thoroughly examine the synchronous condensers for asbestos before awarding the subcontract. The district court concluded that Coy/Superior had not provided any authority to support such a duty. The court noted that the subcontract repeatedly pointed out the possibility that asbestos might be present and the court went on to observe that the presentation of asbestos as a *possibility* made it clear that BNFL had not exhaustively tested for asbestos. Since the subcontract made it clear BNFL had not previously tested the condensers for asbestos, and Coy/Superior did not point to any provision of law or contract that imposed a duty to complete such testing, the district court held that BNFL was entitled to summary judgment on this breach of contract claim.

On appeal Coy/Superior does not squarely face the district court's holding that it failed to point to any source of the alleged duty. Instead, Coy/Superior reiterates information from the record which ultimately accomplishes nothing more than demonstrating that BNFL should have known, and did know, that asbestos might be present and *could* have tested for it. However, the mere fact that BNFL knew of the potential presence of asbestos and had the ability to test for it does not give rise to a legal duty to conduct such testing. There is nothing in contract law which prevents two parties from entering into a contract knowingly ignorant of a potentially significant fact. The subcontract both clearly stated the possibility that asbestos would be found in the course of the performance of the contract and set forth in some amount of detail the appropriate procedure to follow in that eventuality. The district court properly granted summary judgment.

**F. Negligent Misrepresentation**

- 16 -

The district court merged the negligent misrepresentation claim with the breach of contract claim on the basis that the two counts involved precisely the same alleged actions and sought the same damages. Consequently, the district court dismissed the negligent misrepresentation claim. Coy/Superior argues that if summary judgment had not been improperly granted on the fraud count, the district court would not have reached this conclusion. Coy/Superior does not provide any other arguments assailing the district court's merger of the negligent misrepresentation claim with the breach of contract claim. As discussed above, there is no basis to overturn the district court's grant of summary judgment on the fraud claim. Consequently, Coy/Superior has not demonstrated any reason to overturn the district court's ruling on the negligent misrepresentation claim.

## G. Findings of Fact

After summary judgment was granted on most of the claims, two claims remained to be tried. A bench trial was held to resolve Coy/Superior's entitlement to copper cable which BNFL permitted a third party to remove from the K-791 building and to determine the adequacy of BNFL's testing for asbestos. The district court found that Coy/Superior was entitled to the copper cable which came from K-791, but determined that only 10,000 pounds of cable came from that building, not the 100,000 pounds asserted by Coy/Superior. Coy/Superior claims that the finding of fact that only 10,000 pounds of cable came from K-791 was clearly erroneous. The district court further found that BNFL's testing of the condensers while they were on its site was adequate. Coy/Superior asserts that this determination was clearly erroneous. as well.

Coy/Superior acknowledges that since it is challenging findings of fact it must establish that the district court's determinations were clearly erroneous. A finding of fact is clearly erroneous

when, although there is evidence to support it, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985). When the findings rest on credibility determinations, even greater deference must be given. *Anderson*, 470 U.S. at 575. Moreover, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *EEOC v. Yenkin-Majestic Paint Corp.*, 112 F.3d 831, 834 (6th Cir. 1997) (quoting *Anderson*, 470 U.S. at 574). Consequently, an appellant's burden to meet the clearly erroneous standard cannot be met merely by demonstrating a conflict in the testimony. *Franklin v. Aycock*, 795 F.2d 1253, 1257-58 (6th Cir. 1986).

At the bench trial Mr. Roswech testified, based on his observation of the weighing of the trucks which were shipping the copper, that he witnessed approximately 100,000 pounds of cable be removed from the worksite. Mr. Brede testified that while approximately 100,000 pounds of copper was taken from the site, only approximately one tenth of that amount was from the K-791 building. Mr. Roswech testified that all 100,000 pounds he saw on the trucks must have come from the K-791 building because the copper from the other buildings had been removed earlier. The district court considered this conflicting testimony and determined that Mr. Brede's testimony was more credible because he was on-site on a near-daily basis, and was familiar with the work taking place in the K-791 building when the copper was being removed.

Coy/Superior acknowledges that there was conflicting testimony regarding the amount of copper that came out of K-791 and that the district court made a credibility judgment to determine which estimate to adopt. Yet Coy/Superior claims that the court's credibility determination was

clearly erroneous because photographs were introduced at trial that showed considerable amounts of copper cable coming out of K-791, being stored in the area, and a truck loaded with cable as well as showing that the other buildings on the site were open and bare. Coy/Superior claims that these photos provide extrinsic evidence to support Mr. Roswech's testimony which made it clearly erroneous for the district court to adopt Mr. Brede's estimate which was not supported by extrinsic evidence.

An examination of the evidence presented at the trial reveals that the district court was forced to choose between conflicting testimony. The photos relied upon by Coy/Superior were simply one source the court had to look at in order to make that determination. The photos do not support Mr. Roswech's testimony so clearly as to leave the clear and definite impression that rejecting his estimate was a mistake. Coy/Superior has fallen far short of overcoming the considerable deference due to the district court's credibility determination. Pointing to evidence contrary to the district court's finding of fact is simply insufficient.

Coy/Superior also argues that "it was clearly error for the court to conclude that adequate testing was done on the condensers while they were still in the switchyard." Yet Coy/Superior provides virtually no support or explanation for this bare assertion. In its reply Coy/Superior argues that the district court's ruling on the adequacy of testing would have to be overturned if Coy/Superior prevails on its argument that it should have been permitted to file a third amended complaint. However, Coy/Superior has not prevailed on that point. There is no basis to overturn the district court's finding.

### III. CONCLUSION

For the foregoing reasons, all of the district court's rulings challenged by Coy/Superior are

**AFFIRMED**, the district court's order granting summary judgment in favor of Coy/Superior on the

declaratory judgment claim is **REVERSED**, and this case is **REMANDED** with instructions to enter

summary judgment in favor of BNFL on the declaratory judgment claim.