LYNAS *v.* MAXWELL FARMS.

1. CONTRACTS—EVIDENCE—APPEAL AND ERROR.

On appeal from judgment for defendant notwithstanding verdict for plaintiff in action of assumpsit, record is viewed most favorably to plaintiff and, so viewed, contract for breach of which action was brought *held,* to be one whereby plaintiff was to act as manager of defendant corporation's milk station as permanent or life-time employee so long as his services were satisfactory to it.

2. SAME—PERMANENT EMPLOYMENT.

Generally, in the absence of distinguishing features or provisions or a consideration in addition to the services to be rendered, contracts for permanent employment or for life are considered as indefinite hirings, terminable at the will of either party.

3. SAME—CONSIDERATION.

Sale of plaintiff's restaurant at a sacrifice in order that he might be in a position to assume duties as manager of defendant's milk station without delay *held*, no part of consideration for contract of employment as such manager since it was not a part of performance of services to be rendered and not mutually understood to be a part of the consideration.

4. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—SATISFACTORY PERFORMANCE.

Defendant's termination of employment of plaintiff as manager of its milk distributing station, which was permanent employment so long as his services were satisfactory, *held*, justified, in suit for breach of contract of employment under record showing he was found sleeping at his desk on several occasions, failed to keep proper check on accounts of drivers and detect shortages therein and withdrew sums from cash drawer and inserted his I. O. U. in lieu thereof, satisfactory performance of such services being a matter for determination of employer, not a jury.

Appeal from Oakland; Doty (Frank L.), J. Submitted April 21, 1937. (Docket No. 112, Calendar No. 39,271.) Decided May 21, 1937.

Assumpsit by Frederick Lynas against Maxwell Farms, a Michigan corporation, for breach of a contract of employment. Verdict for plaintiff. Judgment for defendant *non obstante veredicto*. Plaintiff appeals. Affirmed.

*Arthur J. Adams,* for plaintiff.

*Devine, Kent & Devine,* for defendant.

CHANDLER, J. The defendant corporation is engaged in the business of distributing milk in the city of Birmingham and its vicinity. Mr. Maxwell Case, the president of the defendant company, and plaintiff had for many years been close personal friends. As a result of such friendship, Mr. Case, on numerous occasions during the years, had been instrumental in securing positions for plaintiff with various companies engaged in milk distribution.

In 1926 plaintiff terminated his employment in New York and accepted a position with a creamery in Detroit offered to him by Case. This employment lasted for a period of 60 or 90 days. Plaintiff, thereafter, decided to enter a business of his own and in due time established a small restaurant on Grand River avenue in Detroit, which he continued to operate in various locations until some time in April, 1934. In the meantime, Mr. Case had organized the defendant corporation. In April, 1934, he prevailed upon plaintiff to dispose of his restaurant and accept a position with defendant as manager of its milk station in the city of Birmingham. Plaintiff thereupon sold the restaurant business having a value of $2,500, as estimated by him, for the sum of $400 and moved to Birmingham. He stated that the restaurant was sacrificed so that he might be immediately available to assume his duties with the defendant company.

At the time he accepted the offer of Mr. Case it was understood that he was to have a permanent lifetime position with the defendant. His duties consisted of general supervision of the milk distributing station in Birmingham. At the inception of his employment he received a salary of $40 per week which was later increased to $50. When he assumed his duties, defendant was operating three

milk routes from the station with a distribution of 1,100 quarts of milk per day. In June, 1935, the business had increased so that at that time defendant was operating eight routes and distributing between 2,400 and 2,600 quarts daily.

In June, 1935, plaintiff's employment was terminated. Plaintiff testified that no reason was given for his discharge other than that he was informed by the wife of Mr. Case that they had decided to manage their own business. On the other hand, Mrs. Case asserted that plaintiff was relieved of his position due to his incompetence and that he was so informed.

Plaintiff sues in assumpsit to recover damages for breach of his contract of employment. A motion for directed verdict was taken under advisement by the court under the Empson act. 3 Comp. Laws, 1929, § 14531 *et seq.* The court entered judgment for defendant notwithstanding the verdict of the jury in favor of plaintiff. Plaintiff appeals.

Viewing the record most favorably to plaintiff, it must be determined that the contract in question was one whereby plaintiff was offered a permanent position or one for life so long as his services were satisfactory to defendant. On cross-examination he admitted that it was the understanding that his work should be performed to defendant's satisfaction.

Contracts for permanent employment or for life have been construed by the courts on many occasions. In general it may be said that in the absence of distinguishing features or provisions or a consideration in addition to the services to be rendered, such contracts are indefinite hirings, terminable at the will of either party. Illustrative of this type of case are the following: *Lord* v. *Goldberg,* 81 Cal. 596 (22 Pac. 1126, 15 Am. St. Rep. 82); *Rape* v. *Rail-*

*road Co.,* 136 Miss. 38 (100 South. 585, 35 A. L. R. 1422); *Arentz* v. *Morse Dry Dock & Repair Co.,* 249 N. Y. 439 (164 N. E. 342, 62 A. L. R. 231). A similar view has likewise been adopted by this court in *Sullivan* v. *Railway,* 135 Mich. 661 (64 L. R. A. 673, 106 Am. St. Rep. 403).

On the other hand, there is to be found that class of cases where permanent employment has been offered for a special consideration other than the services to be performed by the employee. Typical examples thereof are those cases in which the employee releases a claim held by him against the one offering the employment.

Plaintiff directs our attention to the following decisions, all of which fall within the classification last mentioned. *Brighton* v. *Railway Co.,* 103 Mich. 420; *Stearns* v. *Railway Co.,* 112 Mich. 651; *Sax* v. *Railway Co.,* 125 Mich. 252 (84 Am. St. Rep. 572); *Carnig* v. *Carr,* 167 Mass. 544 (46 N. E. 117, 35 L. R. A. 512, 57 Am. St. Rep. 488). In each of the cited cases there is to be found an element of consideration in addition to the services for which the contract was made.

Plaintiff, however, argues that the facts now before this court present this additional required consideration in that he abandoned and sold at a sacrifice the restaurant business at the insistence of Mr. Case so that he might, without delay, assume his duties with the defendant company. It appears that plaintiff had once failed in the restaurant business and at the time of accepting the offer of defendant, the business was operated in the name of his wife. Assuming, however, the facts relied upon, it cannot be held that they suffice to bring the instant case within the purview of the decisions cited by plaintiff. The detriment, if any, sustained by plaintiff in

preparing himself to accept the offered employment was not mutually understood as being a part of the consideration. The offer was made only for the services to be rendered by plaintiff as manager of the defendant's milk station in Birmingham. The action of plaintiff in disposing of the restaurant was only a necessary incident in placing himself in a position so that he might perform the contract and was not in any way considered by the parties as a part of the performance.

The most that can be stated for plaintiff is that he was employed permanently so long as his services were satisfactory. That his services became unsatisfactory to defendant is sustained by the record in that on several occasions he was found sleeping at his desk. He failed to keep proper check upon the accounts of the drivers and detect shortages existing therein. Immediately prior to his discharge he withdrew sums from the cash drawer and inserted his I. O. U. in lieu thereof.

Under the terms of the contract, defendant could terminate the employment if not satisfied with the services rendered. Whether or not the services were satisfactorily performed was a question to be determined by defendant and not by the jury. *Koehler* v. *Buhl,* 94 Mich. 496.

Judgment affirmed, with costs.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and POTTER, JJ., concurred.