884 F.2d 580
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Alan B. OTIS, Plaintiff-Appellant,
v.
ZAYRE CORPORATION, Defendant-Appellee.
 No. 89-1021.
 United States Court of Appeals, Sixth Circuit.
 Sept. 5, 1989.
 
 Before BOYCE F. MARTIN, Jr., WELLFORD and MILBURN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff-appellant Otis claims he was dismissed in violation of his employment relationship under the now familiar Michigan case, Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579, 292 N.W.2d 880 (1980).
 
 
 2
 Mr. Otis was originally employed by Zayre Corporation (Zayre) 1967 until he resigned voluntarily to pursue other employment in July, 1979. After working briefly in four different jobs, Otis was rehired in 1980 as an assistant store manager of a Zayre retail store in Kalamazoo, Michigan. He remained in this position for about four years. When Barnett, the manager of the Kalamazoo store at which Otis was employed, was transferred to a larger store, Otis was recommended to Frank Gomez, the district manager and Barnett's immediate supervisor, to replace Barnett as the store manager. Gomez then promoted Otis to position of store manager on April 30, 1984 under the former's area of supervision.
 
 
 3
 In April, 1985, Otis' store was scheduled for a normal inventory procedure. Prior to the inventory, Gomez advised Otis that he should take steps necessary to get the store prepared. Despite this advice, Zayre contends and Otis concedes that the store was not, in fact, properly prepared for the inventory. The company employed by Zayre to perform its inventories, conducted its normal inventory procedure of Otis' store as scheduled. Although the inventory was made more difficult because of the inadequate preparation (mostly in the store's stockroom), Zayre and its inventory taker agree that the inventory then reflected accurately the amount of merchandise contained in the store. Otis contends that the store was unprepared through no fault of his own; defendant's failure to provide additional funding for additional help was his reason for the condition of the store. He also contends that the inventory was not correct.
 
 
 4
 Gomez sent a memo to Otis outlining the deficiencies and his concerns and placing Otis on probation due to his failure to fulfill his managerial responsibility of adequately preparing the store for inventory. About one month thereafter, Craig Walt, the Zayre Zone Training Manager, was brought in to evaluate the situation and to determine what should be done at the store. Walt visited Otis' store for two days, talked with Otis' employees, and generally evaluated the store's condition. Based upon his visits, Walt concluded that there were a number of fundamental operational problems at the store revealing a clear management problem. He recommended Otis be removed from his position as manager of that store, although not necessarily terminated. Otis was then relocated to the Hammond, Indiana store as an assistant manager on June 23, 1985. The results of the April inventory were still not then known because of the time required for final results to be determined.
 
 
 5
 Shortly after Otis had assumed his new assistant store manager position, it became known that preliminary inventory results revealed a 6.2% "shrink" at Otis' store.[1] Zayre submitted evidence to reflect that a 1% shrink is considered acceptable and that a shrink of 3% or more would usually result in immediate termination. Gomez immediately terminated Otis based on the store evaluation and preliminary inventory "shrink" problems.
 
 
 6
 Otis then commenced this action in Kalamazoo County Circuit Court almost two years later, and Zayre removed the case to the federal district court based on diversity. Otis alleged three causes of action against Zayre: (1) breach of contract, (2) negligence and, (3) breach of implied covenant of fair dealing.
 
 
 7
 Zayre filed a motion for summary judgment which the district court granted, finding that Otis failed to state a cause of action under Toussaint and that Otis' other two claims failed to state a cause of action under Michigan law. The district court also denied Otis' motion to alter or amend the judgment from which Otis now appeals. Otis now challenges on appeal the district court's dismissal of his Toussaint claim.
 
 
 8
 Appellant contends first that the district court made significant factual errors which require reversal of its dismissal. Second, appellant contends that the district court erred as a matter of law in granting summary judgment on its Toussaint claim.
 
 
 9
 Factual errors concern the misciting by the district court of the text of the employment application signed by appellant in 1980, reliance by the court on a disclaimer found in the personnel manual which allegedly did not apply to appellant as manager or supervisor. Appellant relies upon two cases, Kotteakos v. United States, 328 U.S. 750, 757 n. 9 (1946), Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp., 571 F.2d 1144, 1149 (10th Cir.1978), in respect to his factual contention, but these cites simply stand for the proposition that harmless or nonprejudicial errors cannot be the basis for reversal. They provide no support for appellant's contention that the asserted errors in this case warrant reversal.
 
 
 10
 The actual language in the employment application, not correctly cited by the district court, is as follows:
 
 
 11
 On entering the employ of Zayre I agree to be governed and abide by all Rules and Regulations of my employer, and to perform satisfactorily such duties as may be assigned to me from time to time. I understand that acceptance for employment and any continuation of my employment shall depend upon the results of a probationary period, satisfactory replies from my references and background check, acceptance by the bonding company, acceptance for issuance of security clearance and performance in conduct satisfactory at all times to my employer. I understand that my employment is for no definite or fixed period of time and that neither hours of work which may be assigned to me at any time nor any other act or circumstances shall constitute a guarantee of employment or as to daily or weekly straight time or overtime working hours, if any. No modification or waiver of any of the provisions of the within agreement on the part of my employer shall be considered binding or effective unless in writing and signed by a corporate officer of Zayre. (emphasis added).
 
 
 12
 The statement in the Zayre application for employment indicates that Otis' employment was on a month to month basis, an indefinite term. It does not state specifically that Otis could be terminated with or without cause. The statement mistakenly cited by the court from another case did not make reference to rules or regulations to which the party must abide as the Zayre application states. We must now determine whether appellant has stated facts sufficient to withstand a motion for summary judgment.
 
 
 13
 The last annual management performance appraisal of Otis reflected only that he met stated objectives in four areas and that he performed "less than stated objectives" in two areas, one of which was deemed most important in rating him. He achieved no better than a middle rating which indicated that he was "generally competent." On the evaluation he was advised to "become more consistent and less tolerant" and to "work smarter, not harder." At the time of taking inventory, Gomez advised Otis that he found the store a "total disaster," reflecting disorganization, dirty conditions, unpreparedness, and lack of leadership.
 
 
 14
 The personnel manual utilized by Zayre was described "not directly applicable" to his supervisory position by Otis in an affidavit in opposition to the motion for summary judgment. He claimed that job performance, or lack thereof, did not result in "immediate dismissal" based upon his "understanding" of company policy, based on "the things I learned from the manual and ... supervisors." He stated further in his deposition that he expected "to be treated the same way that I was told to handle my employees," who were subject to policies set out in the employment manual. He claimed also in that deposition that Zayre owed him a duty to perform under the "guidelines set forth in the personnel manual." It is difficult to understand Otis' claim that the manual was, on the one hand, not directly applicable to him, and yet, on the other, that he expected to be treated in accordance with the manual guidelines. As above set out, the manual specifically makes it clear that Zayre employees have no right to anticipate a definite term of employment, and that its provisions do not limit "reasons or procedures for termination." The guidelines might be changed "without notice at any time," and provided for disciplinary action, including probation, suspension without pay, or termination, for "unsatisfactory job performance" based on its seriousness.
 
 
 15
 There is also language in the Zayre employee manual which states:
 
 
 16
 While Zayre believes wholeheartedly in its personnel plans, policies, and procedures, many of which are set out in this manual, they are not conditions of employment. Neither this manual, company practices, nor other oral or written policies of the company create an employment contract or term, or limit the reasons or procedures for termination or modification of the employment relationship. Rather, our manual simply outlines some of our general guidelines which may be changed with or without notice at any time.
 
 
 17
 Toussaint was a departure from prior employment law in that it relaxed the circumstances under which the courts would infer a for cause only termination provision in to the employment contract. The Michigan Supreme Court, however, reiterated the general rule that "employment 'contracts are indefinite hirings, terminable at the will of either party.' " Id. 292 N.W.2d at 883 (quoting Lynas v. Maxwell Farms, 279 Mich. 684, 687, 273 N.W. 315 (1937)). The court stated that a contract of employment terminable only for cause can be created by express agreement, either oral or written, or "as a result of an employee's legitimate expectations grounded in an employer's policy statements." Id., 292 N.W.2d at 885. It is for the plaintiff to prove the departure from the norm; that is an employment for a definite term or a "just cause" basis for termination.
 
 
 18
 The district court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). All disputed facts and inferences are to be determined in favor of the nonmoving party. The Supreme Court, however, has instructed the lower courts to consider the evidentiary standard applicable when considering a motion for summary judgment; in other words, the district court may examine the evidence presented as it would pursuant to a motion for a directed verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
 
 
 19
 After reviewing all the evidence in this case, we are persuaded that appellant has failed to submit any evidence of substance to support his claim that he had an implied just cause termination contract under Toussaint. Instead, appellant merely assumes that his employment contract contains an implied just cause termination contract, and claims that defendant must demonstrate otherwise. In this case, appellant did not claim that anyone in the company specifically told him that his employment could be terminated for cause only. Appellant also failed to introduce any evidence of defendant's written or oral policy statements or general conduct which could legitimately be interpreted as creating a just cause termination contract. Indeed, the written evidence is to the contrary. Appellant had mere subjective expectation that he would be terminated only for just cause. His subjective expectation does not create an enforceable contract right. See Dell v. Montgomery Ward & Co., Inc., 811 F.2d 970, 974 (6th Cir.1987); Reid v. Sears Roebuck & Co., 790 F.2d 453. There were no legitimate expectations grounded in the employer's policy of any just cause basis for termination. Taylor v. General Motors, 826 F.2d 452 (6th Cir.1987).
 
 
 20
 The Zayre application for employment makes reference to the requirement of "performance in conduct satisfactory at all times" to the employer. Toussaint makes reference to the employer who has not agreed to job security setting out that "the employee serves at the pleasure or at the will of the employer or as long as his services are satisfactory to the employer." 292 N.W.2d 880. In light of these considerations we find no need for Zayre to have employed any further language to the effect that it could discharge with or without just cause, as contended by appellant, in order to make the "at will" nature of the employment relationship sufficiently clear.
 
 
 21
 Accordingly, despite the citation to the wrong contract made by the district court, we find no error in the grant of summary judgment and we AFFIRM.
 
 
 
 [1]
 "Shrink" is the difference between the inventory as reflected on Zayre's books and the actual physical inventory