Paul L. Maloney, United States District Judge
In Michigan, employment is presumptively "at-will," meaning that it can be terminated at any time by either party-even before the employment has begun. But sometimes, a relationship between an employer and employee has "distinguishing features" that place it outside the scope of normal, at-will employment.
Del Kostanko retired in June of 2015 after more than twenty years working in the Lansing Police Department. Finding retirement not quite to his liking, Kostanko began to pursue other employment in law enforcement. By May of 2017, he was faced with a choice; he had received offers of employment to work as a Narcotics Analyst for the Michigan State Police or as a contracted Healthcare Fraud Senior Investigator for the United States Attorney's Office for the Western District of Michigan, which was staffed by MVM, Inc.
Mindful of his children and their impending foray into the costly world of higher education, Kostanko chose the position that paid nearly double the other; he accepted the offer from MVM to work as a Healthcare Fraud Investigator. And the same day he accepted MVM's offer of employment, Kostanko turned down his offer from the MSP.
Unfortunately for him, MVM's offer of employment was not all that it seemed. Even after MVM reassured Kostanko that the position was his and sent him an offer letter, the U.S. Attorney's Office decided that, before selecting Kostanko for the position, it wanted to "see some competition." MVM then forwarded the application of another candidate, Barbara Birdsong, a recently-retired Internal Revenue Service Investigator. Ultimately, it was Birdsong who was selected for the position.
Kostanko brought this suit, raising a sole claim of promissory estoppel against MVM, and MVM has now moved for summary judgment. Accordingly, there are two questions for the Court to consider: (1) Whether Kostanko's relationship to MVM had distinguishing features to place it outside the realm of at-will employment as a matter of law, and, if so, whether a reasonable juror could conclude that (a) MVM made a promise, (b) that it should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (c) that Kostanko relied on the promise, and (d) Kostanko's reliance on the promise caused an injustice. Because the Court answers the first question in the negative, summary judgment is warranted, and the Court need not address whether Kostanko has otherwise generated sufficient evidence to create a material dispute of fact for trial.
I.
Defendant MVM, Inc. is a staffing agency that specializes in placing employees with the federal government. It has a contract with the United States Attorney's Office (USAO) for the Western District of Michigan to staff a Healthcare Fraud and Abuse Control Senior Investigator ("Senior Investigator"). In September 2015, the USAO's contracting officer, Warren "Skip" Olson requested a bid from MVM for the placement of a Senior Investigator. MVM then posted the job on its website.
*884 MVM received several applications, including one from Plaintiff Del Kostanko. Kostanko had retired from the Lansing Police Department a few months earlier, after twenty-two years of service. After retiring, Kostanko worked part-time as a private investigator for Brooks Investigations, but he was interested in pursuing a full-time position, which drew him to the Senior Investigator position. But by the time Kostanko applied, MVM had already focused on another candidate, James Adamcheck, who was ultimately hired for the position. Adamcheck held the position for approximately eighteen months, until he decided to retire in the Spring of 2017.
On May 22, 2017, Kathy Brooks, an auditor working in the USAO, contacted Kostanko and told him to call her because of Adamcheck's retirement and the corresponding availability of the Senior Investigator position. (ECF No. 34-11 at PageID.246.) That same day, Kostanko also spoke with Adamcheck, who encouraged him to apply. After their conversation, Kostanko sent his resume to Adamcheck, and Adamcheck forwarded it to Kevin Reyes, MVM's Operations Manager.
The Senior Investigator job was not the only one Kostanko was pursuing. He was already being considered by the Michigan State Police for a full-time position as a Strategic Narcotics Intelligence Analyst. He applied on March 31, 2017 and interviewed with the MSP Criminal Intelligence and Narcotics Manager on May 8, 2017. By the time he corresponded with Adamcheck on May 22, Kostanko wrote that he had a conditional job offer from the MSP (pending a drug screening) and that he expected to have a formal offer in the next few days. True to his expectations, Kostanko received a formal offer for the Narcotics Analyst position three days later on May 25.
May 25, 2017 was a busy day for Kostanko. In addition to receiving the job offer from the MSP, he interviewed for the Senior Investigator position by phone with Shaneice Singleton, an MVM recruiter. At the close of the interview, Kostanko informed Singleton of his other job offer.
While the precise timing is not clear from the record, Kostanko also discussed the Senior Investigator position with Reyes on or before May 25. According to Kostanko, Reyes told him that his resume would be "fast-tracked" based on Adamcheck's recommendation and that his resume would be the only one passed along to the USAO to review.
But on May 26, Reyes contradicted his earlier statement, informing Kostanko that his resume would be sent "along with the others" for consideration by the USAO. Kostanko remembers telling Reyes that this unwelcome news was a "curveball" and that he had a solid job offer from MSP, and that he would "go with the one that was the most secure between the two of them." Reyes called Kostanko back about fifteen minutes after this conversation. Kostanko asked him directly about the Senior Investigator position: "Kevin, do I have the job or not?" Reyes allegedly responded, "Yes, you have the job." Kostanko then informed him that he would decline the Narcotics Analyst position with the MSP.[1]
*885 A few days later, Kostanko received a letter from MVM, confirming that it was offering him the position, "contingent upon the satisfactory outcome of a personal background check .... [A]s well as client acceptance of [his] qualifications." Kostanko accepted MVM's offer the following day, June 2, 2017. After doing so, he met with the decisionmakers from the Michigan State Police and formally declined its offer of employment to him.
But Kostanko didn't really have the Senior Investigations job. The same day that Kostanko accepted MVM's contingent offer, Reyes emailed Skip Olson to let him know that MVM had "completed the internal checks" required to hire Kostanko. Olson responded by requesting a meet-and-greet. However, Olson sent a second email later on June 2nd. He informed Reyes that "Management" at the USAO had reviewed Kostanko's resume but "would like to see some competition" before holding a meet and greet or making a hiring decision. Reyes then immediately forwarded the resume of Barbara Birdsong, a retired investigator who had worked for the Internal Revenue Service. Birdsong had applied at the same time as Kostanko, and MVM had also conducted a phone interview with her. But MVM had not made a conditional offer of employment to her.
Reyes called Kostanko to break the news that multiple candidates would be having Meet-and-Greets with the USAO. Kostanko was predictably unhappy, but Reyes allegedly told him, "Don't worry about it. You still have the job; you're the most qualified." Kostanko then met with USAO staff on June 9, 2017.
On June 12, 2017, Reyes emailed Kostanko to tell him that the USAO was hiring another candidate-Birdsong. After finding out that he had not gotten the Senior Investigator job, Kostanko immediately called the MSP to inquire about the Narcotics Analyst position but was informed him that it had been filled. Thus, in a span of two weeks, Kostanko went from having two putative job offers, to none. He remains employed by Brooks Investigations but has not secured full-time employment.
II.
Kostanko filed suit in this Court on September 5, 2017, invoking the Court's diversity jurisdiction by alleging that Kostanko and MVM are citizens of different States and that the amount in controversy exceeds $ 75,000. 28 U.S.C. § 1332.[2] (ECF No. 1.) MVM filed the instant motion for summary judgment on August 23, 2018, and it is now ripe for resolution. (ECF Nos. 34-36.)
Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) ; Tucker v. Tennessee , 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. Bennett v. City of Eastpointe , 410 F.3d 810, 817 (6th Cir. 2005) (quoting Celotex Corp. v. Catrett , 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting *886 Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ).
Once the moving party has carried its burden, the nonmoving party must set forth specific facts, supported by evidence in the record, showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e) ; Matsushita , 475 U.S. at 586, 106 S.Ct. 1348. The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson , 477 U.S. at 251-252, 106 S.Ct. 2505. The function of the district court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Resolution Trust Corp. v. Myers , 9 F.3d 1548 (6th Cir. 1993) (citing Anderson , 477 U.S. at 249, 106 S.Ct. 2505 ).
However, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Amini v. Oberlin College , 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. Daniels v. Woodside , 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting Anderson, 477 U.S. at 252, 106 S.Ct. 2505 ). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." Pack v. Damon Corp. , 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted). In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Daniels , 396 F.3d at 735.
III.
Plaintiff raises a single claim of promissory estoppel.[3] "The elements of a promissory estoppel claim consist of (1) a promise (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee and (3) that, in fact, produced reliance or forbearance of that nature (4) in circumstances requiring enforcement of the promise if injustice is to be avoided." Zaremba Equip., Inc. v. Harco Nat'l Ins. Co. , 280 Mich. App 16, 41, 761 N.W.2d 151 (2008)
Can Kostanko evade the rule of at-will employment?
MVM argues that Kostanko's claim fails because the general rule of employment in Michigan is that an employer-employee relationship may be terminated at any time, by either party, with or without cause, and with or without notice. See Lynas v. Maxwell Farms , 279 Mich. 684, 687, 273 N.W. 315 (Mich. 1937). MVM further argues that although there are two exceptions to the general rule, they are inapplicable here. Kostanko agrees with MVM's recitation of the law, but he argues that he falls under the exception for situations where the employment agreement includes some "distinguishing features or provisions" that take the relationship out of the realm of at-will employment. See Cunningham v. 4-D Tool Co. , 182 Mich. App. 99, 451 N.W.2d 514 (1989). In other words, if MVM's offer of *887 employment to Kostanko was terminable at will, then it is "insufficient to support a claim of promissory estoppel." Peoples-Peterson v. Henry Ford Health Sys. , No. 293866, 2011 WL 149990 (Mich. Ct. App. Jan. 18 2011) (citing Meerman v. Murco, Inc. , 205 Mich. App 610, 615-616, 517 N.W.2d 832 (1994) ).
First, what are distinguishing features? The term comes from Lynas , when the Michigan Supreme Court explained that "[c]ontracts for permanent employment or for life have been construed by the courts on many occasions. In general, it may be said that in the absence of distinguishing features or provisions or a consideration in addition to the services to be rendered, such contracts are indefinite hirings, terminable at the will of either party." 279 Mich. at 687, 273 N.W. 315.
A "classic example" of distinguishing features is the existence of a collective bargaining agreement, which limits termination to a discharge for cause, because this type of term "clearly and forcefully indicate[s] a mutual intention to limit the employer's discretion in terminating the employment relationship." See Toussaint v. Blue Cross & Blue Shield , 408 Mich. 579, 292 N.W.2d 880 (1980). In Toussaint , the Michigan Supreme Court applied the distinguishing features doctrine and concluded that by including stock options that could not fully vest for five years, an employer had created an employment relationship which contained distinguishing features because the stock options and employee handbook evinced an implied promise to discharge only for cause. Id. at 596, 292 N.W.2d 880 Therefore, when the plaintiff was terminated just prior to the vesting of his stock options, it was a question for the jury to determine the reason for the employee's termination. Id.
In addition to structuring the terms of a written employment agreement to evince an intention to alter an at-will employment relationship, an employer's assurances to an employee about her job security or the length of employment may also create distinguishing features. The Michigan Court of Appeals has spilled much ink explaining how and when an employer's assurances, but for many years the issue remained unclear.
For instance, in Hackett v. Foodmaker, Incorporated , the plaintiff and defendant entered into a contract where the plaintiff was to manage the defendant's fast-food restaurant in Ypsilanti, Michigan. 69 Mich. App. 591, 245 N.W.2d 140 (1976). At the time of contracting, the plaintiff was enlisted in the United States Navy and also worked for the defendant in another of its restaurants in San Diego, California.
Based on the defendant's promise that he could be the manager of the Ypsilanti store, the plaintiff obtained an early release from the Navy and moved himself and his family to Michigan. When he arrived, he found the Ypsilanti store not yet open. And before the Ypsilanti store opened, the defendant learned that the plaintiff had participated in an anti-trust suit against it, and thus refused to give him a store manager position at any of its locations.
The plaintiff filed suit, alleging that it was his understanding that he would remain manager of the Ypsilanti store for as long as he possibly could, and that he would receive $ 225 per week to serve as the manager. A jury found for the plaintiff and awarded him $ 8995 for breach of an employment contract.
On appeal, the Michigan Court of Appeals affirmed, concluding that the plaintiff's employment relationship contained distinguishing features because the plaintiff was never allowed an opportunity to manage the store, as the parties had agreed. The court thus held that if the plaintiff had proven the existence of a contract and was prevented from becoming *888 the manager as his contract entitled him to be, he could recover for a breach of contract. As support, the Hackett court relied solely on Corbin on Contracts.
Hackett was not well received by other panels of the Michigan Court of Appeals. First, in Milligan v. The Union Corporation , the court held that where an employee passed up other job offers to accept an offer of employment, but the employer subsequently terminated the employment before the plaintiff had started, there were no distinguishing features to take the relationship out of the scope of at-will employment. 87 Mich. App. 179, 181, 274 N.W.2d 10 (1978). The court reasoned that "[t]he plaintiff's detriment, if any, in preparing himself to accept the new employment 'was not mutually understood as being a part of the consideration' and 'was only a necessary incident in placing himself in a position so that he might perform the contract.' " Id. at 182-84, 274 N.W.2d 10 (quoting Lynas , 279 Mich. at 688-89, 273 N.W. 315 ).
On Hackett , the Milligan court wrote:
[T]he Hackett defendant's refusal to honor its offer of employment after the plaintiff's participation in an antitrust suit against the defendant raised significant public policy considerations in favor of the plaintiff's claim of wrongful discharge. We do not feel that the fact that the plaintiff in Hackett was not given an opportunity to commence performance under the contract, while considered "a distinguishing feature" by the Hackett panel, was dispositive in determining the existence of a cause of action for damages. Despite the indefinite term of the employment contract, the plaintiff in Hackett would have had a cause of action even if discharge had come after his performance under the contract had begun.
Id. at 184 n.3. Thus, while the Milligan court would have concluded that either the fact of the anti-trust suit, or the plaintiff's move from California to Michigan could potentially support a claim, the mere fact that the employee had been terminated before beginning his employment did not satisfy the "distinguishing features" exception. Id.
But after Milligan , the Michigan Court of Appeals only further muddied the waters. In Filcek v. Norris-Schmid Incorporated , another panel of the court affirmed the denial of a directed verdict where an employer had repudiated an employment contract prior to the employee beginning work. 156 Mich. App. 80, 85, 401 N.W.2d 318 (1986).
The Filcek court recognized that "there [was] no dispute" that if the employment had commenced, it would have been terminable at will by either party. Id. at 82, 401 N.W.2d 318. However, it held that where a prospective employee had resigned from other employment on an employer's promise, the employee had a cause of action if the employer repudiated the contract before the time of performance. Id. at 83, 401 N.W.2d 318. While the Filcek panel noted Milligan's criticism of Hackett , it wrote that it was persuaded that the instant case also fit under the distinguishing features doctrine because after the plaintiff resigned his former position upon an offer of employment by the defendant, which was repudiated, he remained unemployed for approximately fifteen months. Id. Writing in dissent, Judge O'Brien would have followed the Milligan panel's conclusion that it made little sense to allow for a recovery by an employee who had not yet begun work, while denying recovery to an employee who is discharged shortly after performance is commenced. 156 Mich. App. 80, 86, 401 N.W.2d 318 (O'Brien, J., dissenting).
Three years later, the Michigan Court of Appeals against revisited the issue in *889 Cunningham v. 4-D Tool Company, 182 Mich. App. 99, 451 N.W.2d 514 (1989). There, the plaintiff living in Detroit had answered a want-ad for a tool and die worker in Mesick, Michigan. Id. at 100-01, 451 N.W.2d 514. After a tryout, the defendant offered him the position, so the plaintiff arranged to have his mobile home transported to a tract of land he owned nearby. Id. Despite repeated telephone calls to confirm his employment, when the plaintiff showed up for work, the defendant told him that something had come up, and there was no job for him. Id.
This time, the Court of Appeals summarized Hackett , Milligan , and Filcek , and concluded that Milligan and Judge O'Brien's dissent in Filcek properly stated the law. It thus held that the plaintiff's relinquishment of his employment was "a customary and necessary incident of changing jobs." Id. at 105, 451 N.W.2d 514. (citing Milligan ).
The court further distinguished Hackett by indicating that the plaintiff's move to Mesick did not alter the employment relationship because it was not a great distance, and the plaintiff had already owned the land to which he moved. The Court summarized its holding as follows: "Since defendant did not bargain for plaintiff to resign from his prior employment and to move his family from Mt. Clemens to Mesick in order to accept the position, we conclude that these are not distinguishing features but rather are the customary and necessary incidents of changing jobs." See also Marrero v. McDonnell Douglas Capital Corp. , 200 Mich. App. 438, 505 N.W.2d 275 (1993) (following Cunningham and concluding that "resignation from one position to assume another and relocation of family would be customary and necessary incidents of changing jobs rather than consideration to support a promissory estoppel claim").
The trend from Cunningham and Marrero was further crystallized in Barnell v. Taubman Company Incorporated, 203 Mich. App. 110, 512 N.W.2d 13 (1993). There, the plaintiff was a long-term employee of Rapistan, but was eventually lured away from the company on a promise by Taubman to fill a new position as the vice president of financial services. Id. at 112-13, 512 N.W.2d 13.
Part of the plaintiff's trepidation had to do with his job security-he worried that because the position he was being recruited for was newly-created, it lacked stability. However, the company reassured him that he "need not be concerned with summary dismissal and that he would have the same type of job security that he had at Rapistan. Id. at 113, 512 N.W.2d 13. This satisfied plaintiff, so he moved from Grand Rapids to Detroit to begin work for Taubman. But about eighteen months later, the plaintiff was terminated without notice. Id. at 114, 512 N.W.2d 13. He filed suit, alleging age discrimination, wrongful discharge, and promissory estoppel. On his claim for promissory estoppel, the trial court granted summary disposition, reasoning that it was the same claim as one for wrongful discharge. Id. at 123, 512 N.W.2d 13. On appeal, the Barnell court clarified that promissory estoppel is an independent cause of action from a claim for wrongful discharge, but it affirmed the trial court's grant of summary judgment for the same reasons given in Marrero and Cunningham.[4] Id.
*890 Finally, the Michigan Court of Appeals again applied the same body of law in Meerman v. Murco, Incorporated, 205 Mich. App. 610, 517 N.W.2d 832 (1994) (per curiam).[5] There, two of the defendant-corporation's executives-Murray and Vesta-made repeated overtures to the plaintiff to quit her current employment and accept employment with their company. Id. at 611-12, 517 N.W.2d 832. Eventually, the plaintiff was persuaded and resigned her employment to join the defendant as Vesta's administrative assistant. Id. at 612, 517 N.W.2d 832. But when she arrived for work, she learned that Vesta had been terminated. Id. The same day, Murray offered her a job as his secretary, which plaintiff accepted. Id. But when she went in the following day, she was informed that the position was no longer available, and she thus found herself out of work. Id. While the plaintiff tried to regain her former position, she was unsuccessful. Id.
Ultimately, the Meerman panel found the case indistinguishable from Barnell , which meant that it was bound to reach the same result and affirm the district court's grant of summary judgment. Id. at 615-16, 517 N.W.2d 832. However, the court noted that if it were not bound by administrative order to follow Barnell , it would find "that Vesta and Murray's actions in specifically seeking out plaintiff and inducing her to leave her previous employer were distinguishing features" and would thus reverse the grant of summary disposition on her claim of promissory estoppel. Id. at 616-17, 517 N.W.2d 832.
Here, Kostanko relies on Hackett and Filcek to argue that MVM's offer of employment included distinguishing features, which took it outside the general at-will employment rule. Specifically, he argues that he declined Narcotics Analyst position with the MSP expressly because MVM assured him that he had the Senior Investigator job-which it subsequently repudiated. However, as the Court views the caselaw, the conclusions of Hackett and Filcek as to distinguishing features did not survive Barnell. See Meerman , 205 Mich. App. at 616, 517 N.W.2d 832. And if Barnell precluded the Meerman court from finding distinguishing features, the same result is mandated here.[6]
In other words, if a plaintiff has not shown distinguishing features by resigning their prior employment and relocating their family, Marrero , 200 Mich. App. at 443, 505 N.W.2d 275, neither has Kostanko shown distinguishing features by foregoing employment with the Michigan State Police. See Milligan , 87 Mich. App. at 181, 274 N.W.2d 10 ; Filcek , 156 Mich. App. 80, 86, 401 N.W.2d 318 (O'Brien, J., dissenting).
Taking another tact, Kostanko also argues that public policy considerations would support a conclusion that MVM's offer contained distinguishing features. He *891 says that MVM could not profit off of its contract with the USAO while the position went unfilled, and that Reyes received performance-based bonus for filling contract positions, so the company had a financial incentive to fill the position as quickly as possible. As he puts it, MVM "made more money the sooner the position was filled." (ECF No. 35 at PageID.335.) Therefore, Kostanko says that public policy considerations rebut the presumption of at-will employment because MVM knowingly induced him to turn down other employment because of its desire to make a profit.
The Court is not so persuaded. It is hardly uncommon for an employer to desire to fill a vacancy as quickly as possible. Whether the employer is a staffing agency that profits by sending workers to other entities, or whether the employer profits directly from the employees' work makes little difference. Moreover, there is no precedent for finding distinguishing features on such a theory. Cf. Milligan , 87 Mich. App. at 182 n.1, 274 N.W.2d 10 ) (explaining that public policy exception requires contravention of "well-settled public policy") (citing Sventko v. Kroger Co. , 69 Mich. App. 644, 245 N.W.2d 151 (1976) (retaliatory discharge for filing workmen's compensation claim violated well-settled public policy) ). If an employee could satisfy the distinguishing features exception by alleging that a prospective employer was motivated to profit off the employee's work, the exception would swallow the rule. The Court thus declines Kostanko's invitation to revise decades of Michigan employment law.
In light of the Court's conclusion that Kostanko cannot rebut the presumption of at-will employment, and the Court will grant MVM's motion for summary judgment. Further analysis of the issues raised is unnecessary.
IV.
Plaintiff Del Kostanko received a promise of at-will employment from Defendant MVM, Inc., which it then terminated before it even began. Such a promise is legally insufficient to support a claim for promissory estoppel under Michigan law. Even though Kostanko turned down other employment to pursue the opportunity with MVM, it was a "customary and necessary incident[ ] of changing jobs rather than consideration to support a claim of promissory estoppel." Marrero , 200 Mich. App. at 438, 505 N.W.2d 275. Summary judgment is thus warranted on his claim, and the Court shall enter judgment.
ORDER
For the reasons contained in the accompanying Opinion, the Court GRANTS Defendant MVM, Incorporated's Motion for Summary Judgment. (ECF No. 34 )
IT IS FURTHER ORDERED that Plaintiff Del Kostanko's complaint be DISMISSED WITH PREJUDICE.
JUDGMENT TO ENTER SEPARATELY.
IT IS SO ORDERED.

MVM disputes Kostanko's account of these phone calls, arguing that phone records reveal that the calls could not have happened as Kostanko recounted in his deposition. But Kostanko's account is corroborated by his mother, who was present for Kostanko's end of the conversation and who remembered her son expressing his surprise-the curveball-that his would not be the only resume sent to the USAO. Kostanko also raises some doubt about the completeness of the call records. For purposes of this motion, the Court must resolve the genuine dispute of fact in Kostanko's favor.

When the federal courts sit in diversity jurisdiction, they apply the law of the forum-state. Here, everyone agrees that Michigan state law will resolve the claim.

While Kostanko characterizes his claim as one for "detrimental reliance," there is no freestanding claim for such a cause of action under Michigan law. Erickson's Flooring & Supply Co. v. Tembec, Inc., 212 F. App'x 558, 562 (6th Cir. 2007) ("Michigan does not recognize an independent cause of action for detrimental reliance."). Instead, it is but one element of a claim for promissory estoppel. Aero Taxi-Rockford v. General Motors Corp. , No. 259565, 2006 WL 1479915, at *9 (Mich. Ct. App. May 30, 2006).

The case was far from over when the Michigan Court of Appeals rendered its opinion in Barnell. Initially, the Michigan Supreme Court denied leave to appeal. See 445 Mich. 934, 521 N.W.2d 8 (June 28, 1994). But the court reconsidered its prior order and granted leave to appeal six months later. See 447 Mich. 1042, 527 N.W.2d 517 (Dec. 28, 1994). Then, that order was vacated in May of 1995 when the Court explained that it was "no longer persuaded the questions presented should be reviewed." 448 Mich. 932, 534 N.W.2d 521 (May 19, 1995).
Justice Boyle dissented from the Order Vacating Leave to Appeal because she thought, regardless of the court's view of the merits, the denial of leave to appeal would "reintroduce confusion and uncertainty into an area of law in which the Court has labored long and diligently to provide guidance for the bench and bar." Id.

Meerman was decided after Barnell , but before the Michigan Supreme Court's waffling on whether or not to hear the appeal. See supra n.3.

See Lakeland Regional Health System v. Walgreens Health Initiatives, Inc. , 604 F.Supp.2d 983, 989 (W.D. Mich. 2009) (synthesizing changes to Michigan Court Rules and concluding that as a result of MCR 7.215(J)(1), opinions published after November 1, 1990 prevailed over earlier published opinions that conflicted.